

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| WENDELL WILKINS, | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 6:20-00297-MGL |
| | § | |
| SGT. HORTON, | § | |
|     Defendant. | § | |

## ORDER ADOPTING THE REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Wendell Wilkins (Wilkins), proceeding pro se, filed this lawsuit against Defendant Sgt. Horton (Horton) and other South Carolina Department of Corrections (SCDC) employees. Wilkins later moved to dismiss the other employees, leaving Horton as the sole remaining defendant. Wilkins brought this action pursuant to 42 U.S.C. § 1983 alleging failure to protect and deliberate indifference to serious medical needs.

The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting Horton's motion to dismiss or, in the alternative, motion for summary judgment, be denied. The Magistrate Judge construed "the motion as one for summary judgement" because "[t]he parties . . . each submitted matters outside the pleadings, and these [submissions were] not excluded." Report at 5. "Under Rule 12(b) of the Federal Rules of Civil Procedure, when matters outside the pleadings are submitted with a motion to dismiss for failure to state a claim, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and the parties shall be given reasonable opportunity to present all material

made pertinent to such a motion by Rule 56." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which a specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). The Court need not conduct a de novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *see* Fed. R. Civ. P. 72(b).

The Magistrate Judge filed the Report on January 27, 2021, and Horton filed objections on February 9, 2021. The Court has reviewed the objections, but holds them to be without merit. It will therefore enter judgment accordingly.

Wilkins was formerly a state prisoner at Lieber Correctional Institution (Lieber). Lieber is part of the SCDC. Horton is a corrections officer at Lieber. Wilkins alleges Horton opened his cell in the early morning hours of November 16, 2018, and allowed numerous inmates to enter. The inmates allegedly punched and stabbed Wilkins. According to Wilkins, he repeatedly asked Horton for medical attention to treat his wounds sustained from the attack, but Horton ignored him. Ultimately, another guard allegedly noticed Wilkins's injuries and transported him to a hospital. Horton disputes Wilkins's version of events as to his involvement in the alleged attack and failure to offer medical assistance.

Wilkins filed a Step 1 Inmate Grievance Form (Step 1 form) dated August 6, 2019. In the Step 1 form, Wilkins described the above attack in his cell and requested a trial for damages, as well as Horton's termination of employment at Lieber. Lieber's Inmate Grievance Coordinator (IGC), Justina Smalls (Smalls), forwarded the Step 1 form to SCDC's Division of Police Services (DPS) for investigation due to the seriousness of the allegations.

According to Wilkins, he failed to receive a response from the Warden as to his Step 1 form; however, Horton contends Wilkins was served with the Warden's denial of his Step 1 form on January 10, 2020, and accepted it. But, Wilkins provided evidence to the Court showing he had been transferred to a prison within the North Carolina Department of Corrections (NCDC) on January 9, 2020. Consequently, there is a dispute as to whether Wilkins received the Warden's denial of his Step 1 form. After being transferred to the NCDC, Wilkins filed the instant lawsuit.

In the Report, the Magistrate Judge recommended: the Court deny Horton's motion for summary judgment as to his affirmative defense of Wilkins's failure to exhaust administrative remedies; the Court deny Horton's motion for summary judgment as to Wilkins's failure to protect and deliberate indifference to serious medical needs claims; and, the Court deny Horton's motion for summary judgment on qualified immunity grounds.

Horton raises three objections to the Report. As to the first, he objects to the Magistrate Judge's recommendation the Court deny summary judgment as to Horton's affirmative defense of Wilkins's failure to exhaust administrative remedies "inasmuch as [the Magistrate Judge] does not take into account the uncontroverted fact that [Wilkins] neither attempted informal resolution as a pre-requisite to filing the Step 1 [form], nor did he even attempt to file a Step 2 [form]." Objections at 4.

Under the Prison Litigation Reform Act (PLRA), codified at 42 U.S.C. § 1997e, a prisoner such as Wilkins must exhaust his administrative remedies prior to initiating a claim under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The law requires "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). "[F]ailure to exhaust is an affirmative defense under the PLRA[.]" *Jones v. Bock*, 549 U.S. 199, 216 (2007). As such, it is the defendant's burden to establish that the plaintiff failed to meet the exhaustion requirements. *Id.* at 211–12.

A prisoner is not required to exhaust his administrative remedies, however, if they are unavailable to him. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."). "Because the PLRA does not define the term [unavailable], courts have generally afforded it its common meaning; thus, an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Id.*

"[T]here are three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 136 S. Ct. 1850, 1853 (2016). "First . . . , an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an

administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* And finally, a grievance process is rendered unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

The SCDC maintains a policy titled "Inmate Grievance System" that sets forth the steps an inmate such as Wilkins must follow to complain of prison conditions. *See* SCDC Policy/Procedure, Inmate Grievance System, GA-01.12 § 13.2 (May 12, 2014), available at http://www.doc.sc.gov/policy/policy.html (last accessed July 12, 2021). According to this Inmate Grievance System, an inmate "must make an effort to informally resolve a grievance by submitting a Request to Staff Member Form to the appropriate supervisor/staff within eight (8) working days of the incident." *Id.* "However, in certain cases, informal resolution may not be appropriate or possible (e.g., when the matter involves allegations of criminal activity)." *Id.*

If unsuccessful in resolving the matter informally, the inmate must then file a "Form 10-5, Step 1" grievance form with designated prison staff. *Id.* "The Warden will [then] respond to the grievant in writing . . . indicating in detail the rationale for the decision rendered and any recommended remedies." *Id.* at § 13.5. The Warden "will respond to the grievant no later than [forty-five] days from the date the grievance was formally entered[.]" *Id.* "The grievant may appeal [the Warden's decision] by completing the SCDC Form 10-5a, Step 2 to the IGC within five (5) calendar days of the receipt of the response by the grievant[.]" *Id.* at § 13.7. "The responsible official will render the final decision on the grievance within [ninety] days from the date that the IGC received the appeal of the Warden's decision." *Id.*

Here, Horton's first objection involves two aspects of the inmate grievance process. As to the first, he argues there is no evidence Wilkins attempted to resolve the matter informally prior to

his submission of the Step 1 form. Thus, according to Horton, Wilkins failed to exhaust his administrative remedies, and Horton's motion for summary judgment must be granted.

Based on the allegations in this case, however, the Court concludes the submission of an informal resolution prior to the submission of the Step 1 form was unnecessary. The Step 1 form submitted by Wilkins discusses the allegedly violent attack by multiple inmates in his cell, and these acts would likely, the Court concludes, equate to criminal activity as contemplated by the Inmate Grievance System. *See* Inmate Grievance System at § 13.2 ("[I]n certain cases, informal resolution may not be appropriate or possible (e.g., when the matter involves allegations of criminal activity)."). And, the fact that IGC Smalls forwarded the Step 1 form to SCDC's DPS for investigation further supports the Court's conclusion this matter involved criminal activity. Accordingly, Wilkins's failure to attempt to informally resolve the matter prior to filing his Step 1 form is inconsequential due to the allegations of criminal activity.

Turning to the second part of Horton's first objection, he argues "[w]hile it may have required some effort on [Wilkins's] part to exhaust his administrative remedies [by filing a Step 2 form after he was transported to a NCDC facility], there is no evidence before the Court that [he] exerted such effort." Objections at 4.

Here, it is undisputed Wilkins failed to exhaust his administrative remedies in accordance with the Inmate Grievance System by neglecting to file a Step 2 form. Thus, the issue here is whether administrative remedies were unavailable to Wilkins, such that his failure to exhaust does not preclude his claims in this action. Wilkins's claims can only survive summary judgment if there is at least a genuine issue of material fact as to whether the grievance process was available to him. *See generally* Fed. R. Civ. P. 56(e)(2).

As noted above, Wilkins filed his Step 1 form on August 6, 2019, and the IGC received it on August 21, 2019.  *See* Aff. Of Sherman L. Anderson at Ex. 1.  Assuming the Step 1 form was entered on August 21, 2019, the Warden should have responded to Wilkins's Step 1 form no later than Saturday, October 5, 2019.  *See* Inmate Grievance System at § 13.5 (noting the Warden will respond to a Step 1 form no later than forty-five days from the date the form was entered).

SCDC records show Horton provided Wilkins, on January 10, 2020, the denial of his Step 1 form and that he accepted the denial.  But, that contention is directly undercut by records produced by Wilkins showing he was transferred to a North Carolina prison the previous day.

Construing the evidence in the light most favorable to Wilkins, the lack of a written response to his Step 1 form leads the Court to conclude the grievance system operated as a dead end because he was unable to appeal his Step 1 form due to his never receiving the Warden's denial. *See generally* Inmate Grievance System at § 13.7 ("The grievant may appeal [the Warden's decision] by completing the SCDC Form 10-5a, Step 2 to the IGC within five (5) calendar days of the receipt of the response by the grievant[.]").  This conclusion is bolstered, the Court believes, by the inescapable fact had Wilkins not filed the underlying lawsuit, he would never have received Horton's denial inasmuch as SCDC records show it had been properly delivered.  Thus, a genuine issue of material fact exists as to whether the grievance process was available to Wilkins, and the objection will be overruled.

In Horton's second objection, he disagrees with the Magistrate Judge's recommendation the Court deny his motion for summary judgment regarding Wilkins's failure to protect and deliberate indifference to serious medical needs claims due to "genuine issues of material fact . . . as to whether [Horton] violated [Wilkins's] constitutional rights by failing to protect him and by ignoring his serious medical needs."  Report at 12.

Here, as noted by the Magistrate Judge, the "conflicting accounts given under penalty of perjury" as to the events surrounding the incident on November 16, 2018, create genuine issues of material fact as to whether Horton violated Wilkins's "constitutional rights by failing to protect him and by ignoring his serious medical needs." *Id*. Horton, in his objection, argues he "did not know that [Wilkins] had suffered any injury until it was discovered later that morning, at which time [Wilkins] was excreted to medical for treatment." Objections at 5–6. But, the Court is unable, at the summary judgment stage of this litigation, to completely discount the vastly different account set forth by Wilkins in a declaration made under penalty of perjury. Questions of material fact exist, and the Court will overrule this objection, too.

Lastly, Horton objects to the Magistrate Judge's recommendation the Court "deny summary judgment on qualified immunity grounds." Report at 12. Specifically, Horton maintains because his conduct failed to violate Wilkins's constitutional rights, he "should be afforded qualified immunity[.]" Objections at 6.

"Qualified immunity does not . . . override the ordinary rules applicable to summary judgment proceedings." *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005). Even when qualified immunity is invoked, "a genuine question of material fact regarding whether the conduct allegedly violative of the right actually occurred must be reserved for trial." *Id.* (internal quotations and alterations omitted).

Here, as discussed in the previous objection, because questions of fact remain as to whether Horton violated Wilkins's constitutional rights, these questions "must be reserved for trial." *Id.* Consequently, the Court will overrule this objection as well.

After a thorough review of the Report and the record in this case pursuant to the standards set forth above, the Court overrules Horton's objections, adopts the Report, and incorporates it

herein. Therefore, it is the judgment of the Court Horton's motion for summary judgment is **DENIED**.

      **IT IS SO ORDERED.**

Signed this 13th day of July 2021, in Columbia, South Carolina.

                                          s/ Mary Geiger Lewis
                                          MARY GEIGER LEWIS
                                          UNITED STATES DISTRICT JUDGE

                            *****
**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this Order within thirty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.